# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3708

_____

United States of America,    *
           *
    Plaintiff - Appellee, *
           *  Appeal from the United States
  v.           *  District Court for the Eastern
           *  District of Missouri.
           *
Dennis Wayne Hinkle, Sr.,  *
           *
           *
    Defendant - Appellant. *

_____

Submitted: May 16, 2006
Filed: August 4, 2006

_____

Before LOKEN, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Dennis Wayne Hinkle, Sr., was convicted of two counts of being a felon in possession of a firearm, one count of possession of an unregistered short-barrel shotgun, one count of attempt to destroy or conceal a record to impair its availability for use in an official proceeding, and one count of attempt to escape from custody.

The district court[1] sentenced Hinkle to 293 months' imprisonment. Hinkle appeals, challenging the district court's denial of his motion to suppress evidence obtained in the search of a trailer. He also contends that the district court erred in finding that his prior conviction for burglary of a commercial building qualified as a crime of violence for purposes of sentencing as a career offender. For the reasons set forth below, we affirm.

I. Background

In January 2003, Hinkle and Eleonore Griffini were cohabitants of a property on Bender Lane in St. Louis County, Missouri. Hinkle purchased the property with money he borrowed from Griffini's estranged husband, William Kuntscher. The property was placed in Griffini's name. Although Hinkle provided money on rare occasions to pay bills, Griffini was principally responsible for paying the taxes and maintaining the property. There was no evidence that Hinkle paid rent.

Each had a separate bedroom in the home. Hinkle's bedroom was generally open and unlocked. Griffini had access to Hinkle's room and the drawers in his room. Although Griffini testified that Hinkle generally did not want Griffini entering his room, Hinkle expected her to enter his room on a regular basis to place his folded laundry on his bed. Hinkle would get angry if Griffini did not do so. Further, Griffini accessed Hinkle's drawers to put away his socks and to retrieve keys.

On January 13, 2003, the St. Louis Metropolitan Police Department ("SLMPD") contacted Griffini. The SLMPD informed Griffini that Kuntscher had been murdered. The investigation of the murder quickly focused on Hinkle. As a result, the SLMPD conducted searches of the property on Bender Lane on January 13,

---

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

January 16, January 20, and March 20, 2003. Griffini signed consent forms authorizing each of the searches of the Bender Lane property.[2]

### A. January 13 Search

On January 13, the SLMPD asked Griffini to go to the morgue to identify her husband's remains. During the same conversation, the SLMPD learned that Griffini owned, and lived in, the Bender Lane property with Hinkle. One of the officers, Detective Don Reynolds, presented Griffini with a "Consent to Search" form. Griffini reviewed the form and signed it, thereby granting the SLMPD permission to search the property. The permission to search the Bender Lane property necessarily included consent to search Hinkle's room. After receiving consent, Reynolds entered Hinkle's bedroom and located two boxes of .223 caliber ammunition.

### B. January 16 Search

On the morning of January 16, 2003, the SLMPD arrested Hinkle for the murder of Kuntscher. After advising Hinkle of his rights, Reynolds began formal booking procedures, including the seizure of Hinkle's personal property. Hinkle's personal property included his keys. Hinkle told Reynolds that since he was being arrested, Griffini would need his keys. After booking Hinkle, Reynolds gave Hinkle's keys to Griffini pursuant to Hinkle's request.

---

[2]In his brief, Hinkle challenges the "search" of the trailer. However, in this case, the SLMPD searched the trailer on at least two occasions, January 16 and 20. It is not clear whether Hinkle challenges one or both of the searches. It is not necessary, however, for us to determine which search or searches Hinkle is challenging because our analysis is the same. For purposes of this opinion, we will refer to the "search" of the trailer in reference to any of the times the police searched the trailer pursuant to Griffini's consent.

Shortly thereafter, Reynolds again asked Griffini for permission to search the property. Griffini stated, both before and after signing a consent to search form, that it would not be a problem for Reynolds to search the residence. When Griffini gave Reynolds permission to search, she returned the keys to him. One of the keys Griffini gave to Reynolds unlocked the padlock on a trailer located on the property. She told the SLMPD where to find extra keys in the house and how to use the locks. She also gave specific instructions as to commands her dogs would obey.

That afternoon, using the keys provided by Griffini, the SLMPD entered the trailer located next to the house on the property. The officers recovered the following items: 1) a brown rifle case that contained a Sturm Ruger & Company .223 caliber, semi-automatic rifle and four magazines for that rifle with approximately thirty rounds of ammunition; 2) a black nylon gym bag that contained a J. Stevens 16 gauge single shot shotgun, seven boxes of ammunition, ammunition cartridges, shotgun shells, a "slapper" (a leather handled object used for self-defense), three documents from Best-Shot shooting supply relating to the purchase of a firearm by a "Jim Messenger," and documents related to the title of a vehicle; and 3) a crowbar.

C. January 20 Search

The SLMPD contacted Griffini again on January 20, 2003, with the intent of showing her the firearms seized during the investigation. Griffini, voluntarily and without solicitation, showed Reynolds and another detective a hard file cabinet and a black nylon gym bag. At that time, the detectives again asked for permission to search. The detectives obtained a consent to search the property and an additional consent to search the trailer. Griffini helped the detectives locate additional firearms in the residence. She told them that Hinkle had been known to tape firearms under drawers. She unlocked the trailer and allowed officers to search it a second time. The detectives searched the trailer for the murder weapon, firearms, and any other evidence. While the detectives were searching the trailer, Griffini directed them to

a FIE .380 caliber Super Titan firearm rolled up in a piece of carpet near a dishwasher.

D. March 20, 2003

Griffini voluntarily consented to a fourth search of the property on March 20, 2003. The detectives searched the property with a metal detector in an effort to locate any firearms that might be buried.

On May 13, 2004, Hinkle was charged with three counts of felon in possession of a firearm and one count of possession of an unregistered short barrel shotgun. Following his indictment, Hinkle told Griffini to conceal or destroy a Durable Power of Attorney that named Griffini as Hinkle's attorney-in-fact. On June 24, 2004, a superceding indictment was filed, adding a charge of attempt to destroy or conceal a record with the intent to impair its availability for use in an official proceeding.

Hinkle filed a motion to suppress the evidence from the trailer. On July 26-27, a magistrate judge conducted an evidentiary hearing related to Hinkle's motion to suppress. Before the magistrate judge could rule on the motion to suppress, Hinkle's actions further complicated the legal proceedings. On July 27, Deputy Nick Conrad of the St. Genevieve County Sheriff's Department discovered evidence of an attempt to escape by Hinkle. Deputy Conrad found a bar in a window that had been partially cut through and concealed by toothpaste. Lt. Chris Joggerst, the jail administrator, later searched one of Hinkle's notepads and discovered a hand-drawn map of the area around the St. Genevieve County Jail and the name and address of "Bill Smelser." Jail records indicate that a William Smelser was incarcerated in the same cell block as Hinkle.

On September 30, 2004, a second superceding indictment was filed, adding a charge of attempt to escape from custody. On October 29, 2004, the magistrate judge

held an evidentiary hearing on the issues raised by the charge of attempted escape. On December 20, 2004, the magistrate judge recommended denial of the defendant's motion to suppress. The district court adopted the magistrate judge's recommendation.

At trial, Hinkle objected to the search of the trailer, arguing that it was his property and that Griffini did not have the authority to consent to his search. The district court denied his motion. Hinkle was convicted on all counts and sentenced to 293 months. On appeal, Hinkle renews his challenge to the search of the trailer. He also contends that the court erred in finding that his prior conviction for burglary of a commercial building qualified as a crime of violence for sentencing as a career offender.

II. Analysis

A. Motion to Suppress Evidence from the Trailer

Hinkle alleges that the district court erred in denying his motion to suppress the evidence of firearms found in his locked trailer. "We review the denial of a motion to suppress de novo but review underlying factual determinations for clear error, giving 'due weight' to the inferences of the district court and law enforcement officials." United States v. Replogle, 301 F.3d 937, 938 (8th Cir. 2002) (quoting United States v. Wheat, 278 F.3d 722, 725-26 (8th Cir. 2001)).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. A search conducted pursuant to the consent of a person with the authority to grant consent may be undertaken by government actors without a warrant or probable cause, and any evidence discovered through that search

may be used at trial unless it is otherwise inadmissible. United States v. Matlock, 415 U.S. 164, 170 (1974).

A third party with "common authority" over a property, or a third party that a government agent reasonably believes has "common authority" over a property, may voluntarily consent to a search. United States v. Janis, 387 F.3d 682, 686-87 (8th Cir. 2004) ("Common authority is a function of mutual use, joint access, and control, and is a question of fact."); see also Matlock, 415 U.S. at 171 n.7. In this case, Griffini, the named property owner and party primarily responsible for the Bender Lane property, had both actual and apparent authority to consent to the searches, including the search of the trailer. United States v. Brokaw, 985 F.2d 951, 954 (8th Cir. 1993) (holding that consent to search a trailer given by the owner of a property on which the trailer was located was sufficient). Besides being the owner of the property on which the trailer was located, Griffini had joint access to the trailer as demonstrated by the facts that Hinkle gave her the keys and that she knew what the keys were for and how to use the corresponding locks.

Even if Griffini did not have actual authority, she had apparent authority. At the time consent was given by Griffini, the detectives were aware that: 1) Griffini was listed as the legal owner of the Bender Lane property; 2) Griffini and Hinkle lived together; 3) Hinkle had instructed Reynolds to give the keys to Griffini; 4) Griffini provided the keys to Reynolds; 5) Griffini provided specific information regarding the use of the keys and the locks; 6) Griffini gave specific instructions as to commands her dogs would obey; 7) Griffini told the detectives they could search anywhere they wanted and look anywhere they wanted on the property including the trailer; and 8) Griffini had stated to Reynolds that everything was in her name because Hinkle was concerned about going back to prison. This information makes the detectives' belief that she had authority to consent reasonable. See United States v. Oates, 173 F.3d 651, 656-57 (8th Cir. 1999) (holding that officers had sufficient evidence to believe that leaseholder had authority to consent to search of entire

property, including the bedroom of the defendant who lived rent free). Because the detectives reasonably believed that Griffini had common authority over the trailer, and because she consented, the warrantless search of the trailer would be valid even if she did not have actual authority. Janis, 387 F.3d at 686. Accordingly, the district court properly denied Hinkle's motion to suppress the evidence discovered in the search of the trailer.

## B. Burglary as a Crime of Violence

Hinkle asserts that the district court erred in finding that his prior conviction for burglary of a commercial building qualified as a crime of violence for purposes of sentencing as a career offender. We review the district court's factual findings at sentencing for clear error and the district court's application of the Sentencing Guidelines to the facts de novo. United States v. Mathijssen, 406 F.3d 496, 498 (8th Cir. 2005).

We have previously held that burglary of a commercial building is a crime of violence for purposes of U.S.S.G. § 4B1.2. See, e.g., United States v. Bell, 445 F.3d 1086, 1088 (8th Cir. 2006); United States v. Mohr, 382 F.3d 857, 860 (8th Cir. 2004); United States v. Blahowski, 324 F.3d 592, 594-95 (8th Cir. 2003); United States v. Sun Bear, 307 F.3d 747, 752 (8th Cir. 2002); United States v. Stevens, 149 F.3d 747, 749 (8th Cir. 1998). Therefore, the district court did not err in finding that his prior conviction for burglary of a commercial building constituted a crime of violence for sentencing as a career offender.

## III. Conclusion

For the foregoing reasons, we affirm the district court's denial of Hinkle's motion to suppress and its finding that burglary of a commercial building qualifies as a crime of violence for sentencing a career offender.

_____