# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2188

_____

United States of America,          *
                                   *
            Plaintiff - Appellee,  *
                                   *   Appeal from the United States
      v.                           *   District Court for the
                                   *   District of Nebraska.
Dejay Monson,                      *
                                   *
            Defendant - Appellant. *

_____

Submitted: November 16, 2010
Filed: April 13, 2011

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Nebraska law enforcement executed a warrant to search the property of Dejay Monson and seized dozens of firearms, a significant amount of marijuana, and hundreds of marijuana plants. As a result, a grand jury indicted Monson on several offenses. However, the district court later found that the warrant was not supported by probable cause and suppressed the firearms, marijuana, and marijuana plants. After the government voluntarily dismissed its prosecution against Monson without prejudice, Monson filed a motion to recover attorney's fees and expenses pursuant to the Hyde Amendment, Pub. L. No. 105–119, § 617, 111 Stat. 2440, 2519 (1997),

reprinted in 18 U.S.C. § 3006A. The district court[1] denied the motion. Monson now appeals, arguing that the district court abused its discretion by not awarding him attorney's fees and expenses pursuant to the Hyde Amendment. We affirm.

## I. Background

In September 2008, Carvin Housh contacted Jamie Keatts, a deputy with the Burt County, Nebraska Sheriff's Office. Housh told Keatts that he had information concerning criminal activity in the area. During a meeting on September 15, Housh told Keatts that Monson possessed around fifty guns and that Monson would be willing to trade or sell them for cash, property, or drugs.

Chris Nelson, a deputy with the Washington County, Nebraska Sheriff's Office, corroborated Housh's information. While Nelson was operating in an undercover role in August 2007, Housh—who was unaware of the fact that Nelson was a deputy sheriff—took him to Monson's home. Housh showed Nelson several of Monson's guns that Housh said Monson was willing to trade or sell for money and maybe marijuana. Nelson said that Monson, communicating through Housh, offered him a "Tommy gun" and "Tech-9" for $1,600. Housh said the guns were "dirty," which Nelson believed meant the guns had been stolen.

On September 16, 2008, Housh agreed to be an unpaid "cooperating individual" in an investigation of Monson. Housh's cooperation entailed trying to arrange a deal with Monson later that evening to exchange marijuana and cash for a firearm. Law enforcement planned to search Monson's home if the deal occurred.

---

[1] The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

-2-

Based on this plan, Keatts prepared an affidavit and application for a search warrant. The affidavit indicated that Keatts believed Monson possessed stolen guns, drugs, and drug paraphernalia at his home. The affidavit recounted the meetings with Housh that Nelson had in August 2007 and that Keatts had the previous day. The affidavit also indicated that Housh had met with Monson in a bar on September 12, 2008, during which time they had discussed dealing firearms. The affidavit closed with the following paragraph:

> On September 16th, 2008 at about 1715 hours [Housh ("CI")] made arrangements with Munson [sic] for an exchange of cash money and Marijuana for a firearm, [sic] Between the hours of 1730 hours and 2400 hours CI made contact with Munson via the telephone. CI set up with Munson a trade of cash and Marijuana to Munson for a firearm. CI will make this trade at the Munson residence located at [Monson's home address].

Immediately prior to faxing the affidavit to a state-court judge at 5:00 p.m., Keatts telephoned the judge to discuss the future search. Keatts claims he told the judge that "if [the] trade was completed with the cash and marijuana and the gun was purchased we were going to execute the anticipatory warrant." At 5:15 p.m., Housh called Monson's home, but Monson was unavailable. Then, at approximately 5:50 p.m., the judge issued a search warrant. At 7:00 p.m., Housh called Monson and gauged his interest in trading cash and marijuana for firearms. Housh then went to Monson's house and purchased a gun for $400 and an ounce of marijuana. After the transaction, law enforcement executed the search warrant. The search resulted in the seizure of thirty-three firearms, sixty-seven pounds of marijuana, and 266 marijuana plants.

On September 23, a criminal complaint was filed that charged Monson with possessing 100 kilograms or more of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and for possessing a firearm during a drug-trafficking crime,

in violation of 18 U.S.C. § 924(c). At a preliminary hearing on September 26, a magistrate judge found there was probable cause to believe Monson had committed both crimes. On October 22, a grand jury indicted Monson for (1) possessing 100 kilograms or more of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); (2) manufacturing or attempting to manufacture 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1); and (3) being an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3).

On September 11, 2009, Monson requested a hearing to determine whether the search warrant was constitutional pursuant to Franks v. Delaware, 438 U.S. 154 (1978). A magistrate judge[2] found that Keatts made three false or misleading statements or omissions with a reckless disregard for their truth. First, although Keatts accurately noted that Housh was an "unwitting" informant when he showed Monson's guns to Nelson in August 2007, Keatts failed to indicate that Housh had become a "cooperating individual" in the hours leading up to the search. Second, Keatts stated that Housh met with Monson on September 12, 2008. In fact, no meeting occurred on this particular date. Third, in the court's opinion, the deal between Housh and Monson "never occurred" the way Keatts described in the final paragraph of the affidavit. After excising these portions of the affidavit, the magistrate judge found there was insufficient evidence to establish probable cause for the issuance of the warrant. Thus, the warrant was invalid pursuant to Franks. The district judge adopted these findings on February 18, 2010.

The government moved to dismiss its prosecution of Monson without prejudice on February 22, 2010. The district court granted the motion. Monson then filed a motion to receive an award of attorney's fees and expenses pursuant to the Hyde

---

[2] The Honorable F.A. Gossett, United States Magistrate Judge for the District of Nebraska.

-4-

Amendment. The district court denied the motion. Monson now appeals, arguing that the district court abused its discretion by not awarding him attorney's fees and expenses pursuant to the Hyde Amendment.

## II. Discussion

### A. The Hyde Amendment

Pursuant to the Hyde Amendment, a federal court "may" award "a reasonable attorney's fee and other litigation expenses" to a prevailing criminal defendant "where the court finds that the position of the United States was vexatious, frivolous, or in bad faith." 111 Stat. at 2519. The defendant bears the burden of proving that the United States's position was vexatious, frivolous, or in bad faith. United States v. Porchay, 533 F.3d 704, 711 (8th Cir. 2008). Because the text of the Hyde Amendment uses the terms "vexatious," "frivolous," and "in bad faith" disjunctively, courts have recognized that each term has an independent meaning and that proof of any of the terms may entitle a prevailing defendant to an award pursuant to the Hyde Amendment. See id. (separately considering whether a prosecution was frivolous or vexatious); United States v. Manchester Farming P'ship, 315 F.3d 1176, 1182 (9th Cir. 2003) ("The elements are disjunctive; thus, the defendant need only prove one of the three elements to recover.")

The intent of the Hyde Amendment is to deter prosecutorial misconduct, not prosecutorial mistake. United States v. Bowman, 380 F.3d 387, 391 (8th Cir. 2004). Requiring proof of prosecutorial misconduct thus means that a defendant seeking to prove entitlement to a Hyde Amendment award faces a "daunting obstacle." United States v. Gilbert, 198 F.3d 1293, 1302 (11th Cir. 1999). Moreover, we review a district court's denial of a Hyde Amendment award for an abuse of discretion. Porchay, 533 F.3d at 711.

## B. Merits of Monson's Hyde Amendment Motion

Monson argues that the government's prosecution against him was frivolous or vexatious. Monson does not argue that the prosecution against him was in bad faith.[3]

Monson first contends that his prosecution was vexatious or frivolous because the district court ruled that the search warrant violated Franks v. Delaware. We reject Monson's contention that a favorable Franks ruling necessarily means that a prosecution against a defendant was frivolous or vexatious. A favorable Franks ruling constitutes a finding that law enforcement deliberately lied or recklessly disregarded the truth when they included information in an affidavit used to obtain a warrant. Franks, 438 U.S. at 171. A Franks ruling does not necessarily mean that government prosecutors (assuming they did not participate in the preparation of the affidavit) deliberately lied or acted with a reckless disregard for the truth. Instead, when a district court finds that a search warrant violates Franks, rather than automatically concluding that the prosecution against the defendant was frivolous or vexatious, we must consider the individual facts of the case. This analysis requires considering whether the falsehoods producing the Franks violation were deliberately or recklessly made and whether (and to what extent) prosecutors participated in the preparation of the challenged warrant.

Focusing on the prosecutors' conduct, we first reject Monson's argument that the prosecution against him was vexatious. A prosecution is vexatious if it is "without

---

[3] The dissent states that we have "too narrowly construe[d] Monson's argument." According to the dissent, Monson argues that the prosecution against him was not only frivolous and vexatious, but also in bad faith. In his brief, however, Monson only argues "that the government brought charges against him vexatiously or frivolously." Moreover, during oral argument, Monson's attorney expressly stated that he was not arguing that the prosecution against Monson was in bad faith.

reasonable or probable cause or excuse." Porchay, 533 F.3d at 711 (internal quotation marks omitted). Pursuant to this standard, if the government had sufficient evidence to have probable cause to believe that Monson committed the crimes charged, the prosecution against him was not vexatious.[4] Id. We have no trouble concluding that the government possessed sufficient evidence to show probable cause to believe that Monson committed the crimes charged. Nebraska law enforcement seized thirty-three firearms, sixty-seven pounds of marijuana, and 266 marijuana plants from Monson's home. At a preliminary hearing shortly after Monson was charged with possessing marijuana with intent to distribute and possessing a firearm during a drug-trafficking crime, a federal judge concluded there was probable cause to believe Monson committed the crimes charged. Thus, we reject Monson's argument that the district court abused its discretion by finding that the prosecution against him was not vexatious.

Additionally, the district court did not abuse its discretion by finding that the prosecution against Monson was not frivolous. A prosecution is frivolous if it is "utterly without foundation in law or fact." Id. (internal quotation marks omitted). This standard requires a consideration of the legal merit to a prosecution. See Black's Law Dictionary (9th ed. 2009) (defining "frivolous" as "lacking a legal basis or legal merit"); see also United States v. Braunstein, 281 F.3d 982, 995 (9th Cir. 2002) (defining a frivolous prosecution as one that is "foreclosed by binding precedent" or "obviously wrong" (internal quotation marks omitted)); In re 1997 Grand Jury, 215

_____

[4] Even if the government did not have enough evidence to establish probable cause, the prosecution of Monson may still not have been vexatious. In addition to an objective element that considers the prosecution's evidence, the term "vexatious" may also require the defendant to prove a subjective element. See e.g., United States v. Knott, 256 F.3d 20, 29 (1st Cir. 2001) (holding that a "vexatious" prosecution requires a finding that the prosecution "manifests maliciousness or an intent to harass or annoy"). Because we find that Monson has failed to prove the objective element, we do not address whether the Hyde Amendment requires proof of a subjective element.

F.3d 430, 436 (4th Cir. 2000) (defining a frivolous prosecution as one that is "'groundless . . . with little prospect of success'" (quoting Gilbert, 198 F.3d at 1299 (quoting Black's Law Dictionary (6th ed. 1990)))). The parties appear to agree that the government's prosecution of Monson depended upon its ability to use the thirty-three firearms, sixty-seven pounds of marijuana, and 266 marijuana plants to prove the charges in the indictment. Accordingly, to prove that the prosecution against him was sufficiently lacking in legal merit that it was frivolous, Monson must prove that the government's arguments that it could use this evidence were "utterly without foundation in law or fact." Porchay, 533 F.3d at 711 (internal quotation marks omitted).

As noted earlier, the district court determined that Keatts made three sets of false or misleading statements or omissions with a reckless disregard for their truth. We address each of these sets of statements and omissions and consider whether the government had non-frivolous arguments for why these statements and omissions did not create a Franks violation.

First, the district court found that Keatts misleadingly failed to note that Housh had signed an agreement to cooperate with law enforcement in an investigation of Monson on September 16, 2008. We believe the government had non-frivolous arguments that this omission did not result in a Franks violation. The Eighth Circuit has held that a warrant does not violate Franks when the affidavit used to procure the warrant omitted the fact that an informant was paid for his cooperation. United States v. Williams, 477 F.3d 554, 558 (8th Cir. 2007). Here, Housh was not even paid; rather, he merely signed an agreement to be a "cooperating individual." The purpose of the agreement was to ensure that Housh knew what to expect from law enforcement and vice versa. Because omitting the fact that an informant was paid for his cooperation does not result in a Franks violation, the government had a non-frivolous argument that omission of Housh's status as an unpaid cooperating individual did not result in a Franks violation.

Second, the district court found that Keatts falsely stated that Housh met with Monson on September 12, 2008. The district court did not find that this meeting never occurred at all, but rather that it "probably [occurred] months earlier." We believe the government had a non-frivolous argument that this false statement regarding the date of the meeting did not result in the search warrant violating Franks. Even if this date is excised, Keatts's affidavit still contains more than enough information to establish probable cause for searching Monson's residence. Thus, the government still could have had non-frivolous grounds for believing the warrant was valid under Franks even if it conceded that this particular date had to be excised. See Franks, 438 U.S. at 156 (holding that the warrant is only invalid if the un-excised portions of the affidavit do not establish probable cause).

Third and finally, the district court found that the planned transaction between Housh and Monson "never occurred in any way, shape, or form as [Keatts described in the final paragraph of the affidavit]." From the Franks hearing transcript, it is unclear whether the district court felt Keatts's affidavit falsely stated that some events had occurred at the time Keatts applied for the search warrant, or whether the district court felt Keatts's affidavit included false or misleading statements because the events in Keatts's affidavit did not actually end up happening the way Keatts indicated they would. In either case, we note that we ordinarily interpret affidavits in a "common sense" fashion that is not "hypertechnical." United States v. Hudspeth, 525 F.3d 667, 674 (8th Cir. 2008). As a result, regardless of why the district court ultimately thought the final paragraph included false or misleading information, we think the government's arguments to the contrary were non-frivolous.

If the final paragraph falsely stated that certain events had already happened at the time Keatts applied for the search warrant, we believe the government presented a non-frivolous argument that Keatts was making statements regarding future events, not past events. Keatts applied for the affidavit around 5:00 p.m on September 16, 2008. Although Keatts's affidavit indicated arrangements and contact with Monson

were "made"—a verb phrased in the past tense—Keatts indicated that Housh made these arrangements and this contact at 5:15 p.m. and between 5:30 p.m. and midnight, respectively. Of course, at the time Keatts applied for the affidavit at 5:00 p.m., these times had not yet come to pass. Moreover, Keatts ended the paragraph by stating that Housh "will make" a trade with Monson at Monson's house. Keatts could have eliminated any confusion by simply constructing the verb "make" in its future tense each time he used the verb in the final paragraph. Even so, however, we still believe the government had non-frivolous arguments that a common sense reading of the affidavit suggested that Keatts was referencing future events, not past events.[5]

If, on the other hand, the final paragraph included false or misleading statements because the predicted events did not actually end up happening the way Keatts indicated they would, we believe the government had non-frivolous arguments that any minor deviations from the affidavit were not material to whether the triggering condition in Keatts's anticipatory warrant[6] nevertheless occurred. At the

_____

[5] The reason why Keatts was referencing future events was because, according to the government, Keatts sought and obtained an anticipatory warrant. The anticipated transaction in the final paragraph constituted the "triggering condition" that authorized law enforcement to execute the anticipatory warrant. See United States v. Grubbs, 547 U.S. 90, 96–97 (2006) (explaining that a triggering condition is an event that, if it occurs, establishes probable cause for a search). Had the district court agreed with the government that Keatts sought and obtained an anticipatory warrant, then it would have undoubtedly concluded that Keatts's affidavit did not include false or misleading statements regarding past events, but rather predictions about future events.

[6] Monson argues that the government never obtained a valid anticipatory warrant because neither the affidavit nor the warrant explicitly stated that it would be executed if and only if the transaction between Housh and Monson occurred. Although the government admits such language was lacking, it argues that the warrant was still a valid anticipatory warrant because it was obvious from the affidavit that Keatts contemplated that the transaction would occur between Housh and Monson in the future and Keatts testified that law enforcement only intended to execute the

-10-

Franks hearing, Monson argued that, contrary to the affidavit, Housh's deal with Monson was not agreed to (1) "at about" 5:15 p.m. or (2) over the telephone. However, even assuming the affidavit contemplated the occurrence of these events and even assuming these events did not occur, there is no question that Housh did speak with Monson over the telephone at 7:00 p.m. and did exchange cash and drugs for firearms with Monson later that evening. Thus, there is no question that the triggering condition in the affidavit did occur prior to execution of the search warrant. See United States v. Vesikuru, 314 F.3d 1116, 1123 (9th Cir. 2002) (endorsing "common sense" interpretations of affidavits when determining whether a triggering condition occurred). Occurrence of the triggering condition did not depend upon Housh finalizing the deal over the phone rather than in-person, or at 5:15 p.m. rather than later that evening.

In sum, the district court in this case did not abuse its discretion in holding that the government's prosecution of Monson was neither vexatious or frivolous. The government had strong evidence of Monson's guilt, and the government had non-frivolous arguments for why it should have been able to use this evidence in its prosecution of Monson. Although these arguments did not persuade the district court, that does not mean that the government committed prosecutorial misconduct.

---

search warrant if the transaction occurred. We know of no binding Supreme Court or Eighth Circuit precedent that forecloses the government's argument. Braunstein, 281 F.3d at 995. One district court outside this circuit has held that a warrant similar to the one in this case was invalid. United States v. Ware, 154 F. Supp. 2d 1016, 1028–29 (W.D. Ky. 2001) (admitting that a "single word or two" might have been sufficient to make the warrant valid). On appeal, however, the Sixth Circuit found that even if the warrant was technically deficient as an anticipatory warrant, the district court's suppression of evidence was erroneous because the good-faith exception to the exclusionary rule applied. United States v. Ware, 338 F.3d 476, 481–83 (6th Cir. 2003). Thus, since we have encouraged courts to view affidavits in a common sense and non-technical manner, we do not believe the government's argument that Keatts obtained an anticipatory warrant was frivolous.

## III. Conclusion

For these reasons, we affirm the judgment of the district court.

RILEY, Chief Judge, dissenting.

I respectfully dissent. At oral argument, the government conceded, as it should, that the district court applied the wrong legal standard in denying Monson's motion for attorney fees. The Supreme Court has said "[a] district court by definition abuses its discretion when it makes an error of law." Koon v. United States, 518 U.S. 81, 100 (1996). For this reason, I would reverse.

One of the primary issues raised in Monson's brief is whether the district court "appl[ied] an incorrect legal standard to the fee application in this case." The majority does not answer Monson's question, ignoring the district court's legal analysis except to remark that "[t]he district court denied the motion." Ante at 5. I would join issue with all arguments presented for our review.

In its order denying Monson's motion for attorney fees, the district court held:

> [W]hen the Complaint and Indictment were filed, probable cause existed for the government's prosecution. The prosecution was not malicious or dishonest or, in the words of the statute, "vexatious, frivolous, or in bad faith." The government articulated a reasonable position with respect to the suppression issue. Although the government's actions were, in [the magistrate judge's] words, "at the very minimum a reckless disregard" and more than negligent, they were not a reckless disregard "for the truth." Therefore, the government's conduct falls far short of the high standard required for an attorney fee award under the Hyde Amendment.

(footnote and citation omitted). The government did not argue such a distinction before the district court. The district court *sua sponte* premised its denial of Monson's motion on a distinction between a mere "reckless disregard" (which would not support an award of fees) and "a reckless disregard for the truth" (which might).

At oral argument, I asked the government, if its prosecution of Monson did not involve "a reckless disregard 'for the truth,'" then what did the government "recklessly disregard"? The government responded the district court's proposed distinction was illusory and the "reckless disregard" in the underlying <u>Franks</u> proceedings was, in fact, "a reckless disregard for the truth." The government thereby recognized the district court applied the wrong legal standard in denying Monson's motion, and later in the argument, the government expressly conceded in response to another question that the district court did apply the wrong legal standard.

The phrase "reckless disregard" in the context of a <u>Franks</u> hearing is shorthand for "reckless disregard for the truth." <u>See</u>, <u>e.g.</u>, <u>Franks v. Delaware</u>, 438 U.S. 154, 171-72 (1978) (referring to "reckless disregard"). In the underlying <u>Franks</u> proceedings here, the district court characterized the magistrate judge's order as finding the two law enforcement officers acted with, "'at the very minimum,' a reckless disregard for the truth."

Ordinarily I would defer to the district court's ultimate conclusion to deny Monson's motion for attorney fees. <u>See</u> <u>United States v. Beeks</u>, 266 F.3d 880, 883 (8th Cir. 2001) (per curiam) (reasoning the Hyde Amendment's permissive language and "the district courts' unique familiarity with the litigation" support deference on appeal). As the majority explains, there are compelling reasons why the district court might exercise its discretion to deny the motion. <u>See</u> <u>ante</u> at 8-11. The problem is the district court, in creating an untenable distinction between "a reckless disregard" and "a reckless disregard for the truth," made an error of law. Therefore, the district court abused its discretion and reversal is required unless the error of law is harmless.

I cannot say on the present record the district court's error of law was harmless. I reach this conclusion for two reasons.

First, it appears the district court was under the misapprehension that "conscious dishonesty" is necessary to recover under the "bad faith" prong of the Hyde Amendment. See United States v. Monson, No. 8:08CR388, 2010 WL 1949577, *2 (D. Neb. May 12, 2010) ("'Bad faith' connotes more than bad judgment or negligence, and refers to 'conscious dishonesty.'"). Although "conscious dishonesty" qualifies as "bad faith," "bad faith" does not require a showing of "conscious dishonesty." Cf. ReliaStar Life Ins. Co. v. IOA Re, Inc., 303 F.3d 874, 882 (8th Cir. 2002) (defining "bad faith," in part, as "deliberate deception, gross negligence *or* recklessness" (emphasis added) (quotation omitted)); Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1995) (defining "bad faith" for purposes of a sanctions award under 28 U.S.C. § 1927, in part, as "when an attorney knowingly or recklessly raises a frivolous argument" (quotation omitted)). Consistent with this misapprehension, at oral argument, the government attempted to excuse the district court's application of the wrong legal standard as a "typographical" error and urged us to substitute "intentionally" for "reckless disregard for the truth" in the district court's order.[7]

---

[7]The majority says "Monson does not argue that the prosecution against him was in bad faith" and "during oral argument, Monson's attorney expressly stated that he was not arguing that the prosecution against Monson was in bad faith." Ante at 6 & n.3. The majority too narrowly construes Monson's argument. In his motion for Hyde Amendment attorney fees, Monson argued in the district court, "the position of the United States was vexatious, frivolous, or in bad faith." The district court acknowledged "Monson argues that the government's position was vexatious, frivolous, or in bad faith." Although Monson's arguments on appeal are not a model of clarity, Monson contends the district court applied the wrong legal standard, insisting "[r]ecklessness . . . will support a Hyde Amendment fees request," citing Franks, 438 U.S. at 171, and identifies recklessness as sufficient proof of bad faith. After initially saying he was not arguing bad faith at oral argument, which the majority highlights in its footnote 3, Monson's attorney retracted that apparent

-14-

Second, there are material facts in the record from which a reasonable trier of fact could hold "the position of the United States" was "in bad faith." See Pub. L. No. 105-119, 11 Stat. 2440, 2519 (1997). In addition to the three sets of false or misleading statements or omissions, leading the district court to hold there was a Franks violation in the underlying criminal case, see ante at 4,[8] there is evidence the law enforcement officers failed to apprise the state judge who issued the warrant of many other important facts.[9] The United States typically is responsible for the

_____

concession, saying "all of those [vexatious, frivolous, or in bad faith] could be satisfied by a reckless disregard." Thus, the majority's representations that Monson did not argue bad faith in his brief or in his oral argument are in error.

[8]The majority does not explain why the government "had a non-frivolous argument that this false statement regarding the date of the meeting did not result in the search warrant violating Franks" or why, "[e]ven if this date is excised, . . . [the] affidavit still contains more than enough information to establish probable cause for searching Monson's residence." Ante at 9. As the magistrate judge recognized, the timing of the prior meeting was important: if the meeting occurred months earlier than law enforcement officers represented in the search warrant application, the government's argument that its intelligence on Monson was not stale was undermined. The law enforcement officers did not attempt to verify Housh's story, and a reasonable investigation could have discovered that Monson was out-of-state from September 9 through September 15, 2008.

[9]The fact finder could find the omitted material information includes: (1) Housh was an unreliable informant with a significant criminal history, including convictions for crimes of dishonesty; (2) Housh was on probation at the time of the controlled buy, and it was illegal for Housh to possess a firearm under 18 U.S.C. § 922(g); (3) Monson had no criminal history; (4) Detective Nelson had examined the Tech 9 in August 2007 in an undercover capacity and knew the Tech 9 was not automatic or otherwise illegal, yet the Tech 9 is described in the search warrant as "dirty"; (5) in August 2007, Monson had refused to trade the Tech 9 for marijuana; and (6) it was well-known within the local community that Monson wanted cash because his wife was dying of cancer. Further, one of the law enforcement officers has a conviction for a misdemeanor crime of dishonesty, and a reasonable fact finder could discredit the officer's testimony.

-15-

knowledge and actions of state law enforcement officers acting on its behalf. <u>Cf. Kyles v. Whitley</u>, 514 U.S. 419, 437-38 (1995). Evidence exists that the prosecutor knew, or should have known, of the law enforcement officers' material falsehoods and omissions yet pursued an indictment against Monson.[10] The government's resistance to the <u>Franks</u> motion arguably lacked basis in law or fact. For example, the prosecutor excused the search warrant application as nothing more than a "very poorly written" attempt at an anticipatory warrant by "unseasoned officers," when one of the law enforcement officers had more than a decade of experience, including teaching drug investigation at the Nebraska Law Enforcement Training Center.[11]

The district court's legal error, and resulting abuse of discretion, is not harmless. For the foregoing reasons, I would reverse and remand to the district court to reconsider the merits of Monson's motion under the proper legal standard.

_____

[10]The prosecutor does not dispute she discussed the case with the law enforcement officers before seeking the indictment. The prosecutor possessed the search warrant and application and recordings of telephone calls between Housh and Monson—pieces of evidence which are, to varying degrees, inconsistent with each other, as well as inconsistent with the law enforcement officers' stories.

[11]At oral argument, the prosecutor said the law enforcement officers "had no idea what they were doing" and "had never written an anticipatory search warrant before."