# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2074
_____

United States of America

*Plaintiff - Appellee*

v.

Benjamin Joseph Hager

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: December 14, 2012
Filed: March 29, 2013

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Benjamin Joseph Hager appeals the denial of his motion to suppress evidence discovered during a search at his residence pursuant to a warrant. Because the district court[1] correctly denied the motion, we affirm.

_____

[1] The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

## I. Background

In September 2010, Special Agent Timothy Litzinger of the Department of Homeland Security, Homeland Security Investigations directorate (HSI) learned from Michigan HSI agents that they were engaging in a child pornography investigation of Robert J. Mueller, a Michigan resident. During a search of Mueller's residence, Michigan HSI agents discovered images of more than one adult male sexually assaulting Mueller's four minor daughters. The Michigan HSI agents discovered also a pair of soiled young girl's underwear and a note from an individual named "Ace." Mueller admitted that he produced child pornography depicting his daughters and that he traded child pornography with others on the Internet. A search of Mueller's computer hard drive uncovered a photograph of a package marked "Handle with Care" and bearing the return address of "Ben Hager, 716 6th Street South, Apartment #7, Wahpeton, ND 58075." The Michigan HSI agents also found emails from the email address "Cujoben@webtv.net" and learned that this person had a sexual interest in children, that this person referred to himself as "Ace," and that the account was registered to Ben Hager at the same Wahpeton address.

On September 20, 2010, Litzinger received a CD from Michigan HSI that contained explicit emails in which "Cujoben" admitted to having a sexual interest in young girls and their feet. At some point, Michigan HSI agents informed Litzinger that Mueller had been charged with multiple counts related to child pornography and that a search of Mueller's email account uncovered a series of sexually suggestive emails between Mueller and Hager, some of which contained non-pornographic sexually suggestive photographs of Mueller's daughters. Some, but not all, of the emailed images contained exchangeable image file or "EXIF" metadata.[2] When

---

[2]The district court explained the nature of EXIF metadata:

      EXIF-metadata is underlying data that is attached to a file that provides identifying information about the file. It includes such

Michigan HSI agents informed Litzinger of Mueller's and Hager's actions, they disclosed only that Hager was a person of interest and did not ask Litzinger or other North Dakota HSI agents to aid in their investigation.

After receiving this information, North Dakota HSI agents investigated Hager and learned that he had at least two prior law enforcement contacts resulting from his interest in young girls and that he lived with his young daughter at the same Wahpeton address provided as the package's return address. Litzinger told the Michigan HSI agents that he intended to seek a search warrant for Hager's residence and that he intended to search for copies of the images of Mueller's daughters in Hager's possession and for metadata to aid their case against Mueller. The Michigan HSI agents thanked Litzinger, saying that they would find the information helpful.

On November 23, 2010, Litzinger applied for a warrant to search Hager's residence. The warrant application stated that the basis for the search was "contraband, fruits of crime, or other items illegally possessed[.]" Appellant's App. 2. Attached to the application was an affidavit in which Litzinger averred:

> [T]here is probable cause to believe that currently located within [Hager's] residence are sexually suggestive images depicting known children which were produced by Robert John Mueller in Detroit, Michigan. Specifically, it is believed that Robert John Mueller produced sexually suggestive images depicting his four minor daughters and subsequently emailed such images to Ben Hager in Wahpeton, ND. As further set forth below, it is believed that the recovery of these images

> information as (1) when the data file was produced; (2) when it was last modified; (3) the type of device used to create it; (4) the brand or model of a digital camera that was used to create it; and (5) the program or firmware used to create the file. While it can identify a brand and model of camera it does not identify a specific unique camera or serial number of a camera.

D. Ct. Order of Aug. 31, 2011, at 5 n.1 (internal citations omitted).

will establish that Robert John Mueller is responsible for producing other images depicting his minor daughters engaged in sexually explicit conduct which were discovered at his residence . . . .

Appellant's App. 3-4, Litzinger Aff. ¶ 3. The affidavit then described, generally, procedures for seizing computers and characteristics of individuals who have a sexual interest in children, including that "[t]hose who may be collecting sexually suggestive material involving children, including child erotica[,] often possess and maintain any hard copies of such material in the privacy and security of their homes." Appellant's App. 8, Litzinger Aff. ¶ 12. The affidavit described also, in great detail, the investigation of Hager, including the discoveries at Mueller's residence and online conversations between Hager and Mueller and between Hager and young girls. The affidavit concluded:

> Based upon these prior investigations involving a pattern of conduct involving children as well as the information contained in previous paragraphs 15-56, it is believed that Ben Hager is the individual who received the sexually suggestive images of [Mueller's minor daughters] via the email account CujoBen@webtv.net.
>
> As set forth in paragraph 56, the exif metadata associated with the sexually suggestive images depicting Mueller's minor daughters (which is believed to be stored on a computer within Hager's residence), when compared with the exif metadata associated with the child pornographic images depicting Mueller's minor daughters that were recovered from Mueller's residence in Detroit, Michigan, will reveal whether the two sets of images were produced with the same two cameras . . . .

Appellant's App. 35-36, Litzinger Aff. ¶¶ 99-100.

The magistrate judge issued a warrant authorizing a search of Hager's residence for and the seizure of "sexually suggestive images depicting [Mueller's minor daughters] wherever they may be stored or found[.]" Appellant's App. 42. In an

addendum, the warrant listed "requirements [applicable] to any . . . tapes . . . seized pursuant to [the] warrant[,]" including the requirement that:

> Electronic Devices, Storage Media, and Electronically Stored Information seized pursuant to this warrant are subject to search only for the Electronically Stored Information that is specifically described in and that is the subject of this warrant.

Appellant's App. 43 (emphasis omitted).

The next day, Litzinger and seven other law enforcement agents executed the search warrant. During the search, Hager told the agents that he knew Mueller, that they had met in an online chat forum for men who liked young girls, and that he and Mueller shared an interest in young girls. Hager said that he knew that Mueller was molesting his daughters and admitted that he had received non-pornographic pictures of Mueller's daughters. Hager said that the pictures were legal and that he did not have any child pornography. Hager said also that he used a WebTV connection to copy information from the Internet to VHS tapes.

During the search of Hager's residence, agents found 747 VHS tapes capable of holding more than 4,400 hours of information when viewed on a television. Litzinger called a computer forensic expert in North Dakota to ask whether the tapes constituted "electronic media." The expert said that they did. Litzinger then called the First Assistant United States Attorney for North Dakota, who said that the VHS tapes were within the scope of the warrant. Agents then seized the tapes.

Litzinger was unfamiliar with WebTV or how VHS recording devices worked, thinking that WebTV was similar to a modem. Litzinger believed that he would find the Mueller images on the VHS tapes and that the VHS tapes would contain metadata useful to the Mueller case. Litzinger did not know that VHS tapes are analog, not

digital, and as such cannot contain metadata; Litzinger saw a USB[3] port on the WebTV box and assumed that the information on the VHS tapes would be the same as if it was saved on a computer.

Litzinger and a non-expert support staff member of the North Dakota HSI reviewed the VHS tapes at the North Dakota HSI office. Neither Litzinger nor the support staff member knew that the VHS tapes could not contain metadata, although a reasonably competent forensic computer examiner would know this. Upon viewing the tapes, Litzinger and the support staff member found child pornography, whereupon they stopped viewing the tapes and sought and obtained an additional warrant.

Hager was charged with receiving and possessing materials involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(2) and (a)(4)(B). He moved to suppress the evidence derived from the search at his residence. Following the denial of his motion, Hager entered into a conditional guilty plea that reserved his right to appeal the denial of the motion. The district court accepted the plea and sentenced Hager to 120 months' imprisonment.

## II. Discussion

"We review the denial of a motion to suppress *de novo* but review underlying factual determinations for clear error, giving due weight to the inferences of the district court and law enforcement officials." United States v. Nichols, 574 F.3d 633, 636 (8th Cir. 2009) (quoting United States v. Hinkle, 456 F.3d 836, 840 (8th Cir. 2006)). "We affirm a denial of a motion to suppress unless the district court's decision 'is unsupported by substantial evidence, based on an erroneous interpretation

---

[3]Universal Serial Bus or "USB" refers to "a standardized technology for attaching peripheral devices to a computer." New Oxford Am. Dictionary 1907 (3d ed. 2010).

of applicable law, or, based on the entire record, it is clear a mistake was made.'" United States v. Hastings, 685 F.3d 724, 727 (8th Cir. 2012) (quoting United States v. Bay, 662 F.3d 1033, 1035 (8th Cir. 2011)).

## A. Scope of the Warrant

Hager argues that the first search warrant authorized only a search for the metadata of the sexually suggestive images of Mueller's daughters. Accordingly, Hager argues that the agents were not authorized to search for the images on the VHS tapes in his residence because the VHS tapes could not contain metadata. Reviewing *de novo,* see United States v. Stoltz, 683 F.3d 934, 938 (8th Cir. 2012), we conclude that the agents did not exceed the scope of the warrant.

In his affidavit in support of the search warrant, Litzinger made clear that he sought to recover "sexually suggestive images depicting known children which were produced by Robert John Mueller in Detroit, Michigan[.]" Appellant's App. 3-4, Litzinger Aff. ¶ 3. Similarly, the warrant authorized a search for and the seizure of "sexually suggestive images depicting [Mueller's minor daughters] wherever they may be stored or found[.]" Appellant's App. 42. In his affidavit, Litzinger averred that Hager had received the Mueller images and that Hager likely possessed hard copies thereof. Although Litzinger undoubtedly sought to examine any metadata from the Mueller images, a fair reading of his affidavit reveals that Litzinger sought to recover the metadata in addition to, and not to the exclusion of, the images themselves. See United States v. Monson, 636 F.3d 435, 441 (8th Cir. 2011) (explaining that "we ordinarily interpret affidavits in a 'common sense' fashion that is not 'hypertechnical'" (quoting United States v. Hudspeth, 525 F.3d 667, 674 (8th Cir. 2008))).

Hager argues also that the warrant's addendum limited the scope of the search to only metadata. The addendum limited the search of tapes to "Electronically Stored

Information that is specifically described in and that is the subject of this warrant." Appellant's App. 43. The warrant, however, authorized a search for "sexually suggestive images depicting [Mueller's minor daughters] wherever they may be stored or found[.]" Appellant's App. 42. When read in conjunction with the warrant's authorization, the addendum limited the search of tapes to the Mueller images and accompanying metadata, that is, "the subject of [the] warrant." See United States v. Fiorito, 640 F.3d 338, 347 (8th Cir. 2011) ("The broad language of the warrant must be given a practical, rather than a hypertechnical, interpretation that is cabined by the purpose for which it issued."). Accordingly, the agents acted within the scope of the warrant when viewing the VHS tapes found in Hager's residence.

## B. Probable Cause

Hager argues that Litzinger's affidavit did not establish probable cause to search for the Mueller images or the metadata because the affidavit did not establish how recovery of the Mueller images or the metadata would aid in the prosecution of Mueller. We review *de novo* the district court's legal determination of probable cause. United States v. Coleman, 700 F.3d 329, 334 (8th Cir. 2012). "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Palega, 556 F.3d 709, 714 (8th Cir. 2009) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "A totality of the circumstances test is used to determine whether probable cause exists." United States v. Gleich, 397 F.3d 608, 612 (8th Cir. 2005). "Courts should apply a common sense approach and, considering all relevant circumstances, determine whether probable cause exists." Id.

Litzinger argues that the Mueller images and the metadata were "mere evidence," not contraband, and that the agents failed to show how "the evidence sought [would] aid in a particular apprehension or conviction." Warden v. Hayden, 387 U.S. 294, 307 (1967). Litzinger's affidavit, however, stated that "recovery of [the Mueller] images [would] establish that Robert John Mueller is responsible for

producing other images depicting his minor daughters engaged in sexually explicit conduct[.]" Appellant's App. 4, Litzinger Aff. ¶ 3. Regarding the metadata, Litzinger averred that the metadata from the Mueller images thought to be at Hager's residence, "when compared with the exif metadata associated with the child pornographic images depicting Mueller's minor daughters that were recovered from Mueller's residence in Detroit, MI, [would] reveal whether the two sets of images were produced with the same two cameras . . . ." Appellant's App. 26, Litzinger Aff. ¶ 56; accord Appellant's App. 35-36, Litzinger Aff. ¶ 100.

To the extent that the affidavit lacked a thorough explanation as to how this evidence would aid in the prosecution of Mueller, this omission is not fatal to the validity of the search warrant, for "[j]udges 'may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant[.]'"[4] United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007) (quoting United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000)). Upon considering Litzinger's affidavit in its entirety, the magistrate judge could have reasonably inferred that recovery of the Mueller images at Hager's residence would establish that Mueller produced sexually suggestive, albeit legal, images of his minor daughters and that Mueller distributed those images over the Internet. Similarly, the magistrate judge could have reasonably inferred that recovery of the metadata, in turn, would establish that the same camera used to take the sexually suggestive photographs of Mueller's daughters was used to take the illegal pornographic photographs of Mueller's daughters. From all of this, the magistrate judge could have reasonably

---

[4]Nor would the fact that agents may have been interested in investigating Hager for crimes undermine the validity of the warrant. E.g. United States v. Romo-Corrales, 592 F.3d 915, 919 (8th Cir. 2010) ("In general, an officer's underlying motive for obtaining the warrant is irrelevant, as '[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'" (quoting Whren v. United States, 517 U.S. 806, 813 (1996))).

inferred that recovery of the Mueller images and the metadata would aid in the Mueller prosecution.

Hager argues also that Litzinger's affidavit failed to establish probable cause to search for "contraband, fruits of crime, or other items illegally possessed[.]" Appellant's App. 2. Litzinger's affidavit made clear, however, that he sought to recover "evidence of a crime" in the form of the Mueller images and the metadata, for the purpose of establishing that Mueller produced other, illegal images. See Appellant's App. 3-4, Litzinger Aff. ¶ 3. Accordingly, Litzinger's failure to aver that Hager possessed "contraband, fruits of crime, or other items illegally possessed" does not undermine the validity of the search warrant.

Moreover, even if we were to agree with Hager that Litzinger's affidavit somehow failed to establish probable cause to search for the Mueller images and the metadata, the evidence would nonetheless be admissible under the Leon good-faith exception to the exclusionary rule. See United States v. Leon, 468 U.S. 897, 920-21 (1984). "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." United States v. Patten, 664 F.3d 247, 251 (8th Cir. 2011) (quoting United States v. El-Alamin, 574 F.3d 915, 924 (8th Cir. 2009)). "When assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." United States v. Houston, 665 F.3d 991, 995 (8th Cir. 2012) (alteration in original) (quoting United States v. Proell, 485 F.3d 427, 431 (8th Cir. 2007)) (internal quotation marks omitted).

Hager argues that it was not objectively reasonable for Litzinger to rely on the warrant because a reasonable computer forensic examiner, such as the one Litzinger consulted before searching the VHS tapes, would have known that the tapes could not

contain metadata. See United States v. Cannon, 703 F.3d 407, 412 (8th Cir. 2013) (recognizing "four circumstances that preclude a finding of good faith"); United States v. Moya, 690 F.3d 944, 948 (8th Cir. 2012) ("The officer must act with objective good faith and within the scope of the search warrant."). This argument fails, however, because as discussed above, see *supra* Section II(A), the warrant authorized the search for the Mueller images themselves in addition to the metadata. Accordingly, even if Litzinger had personally known that the tapes could not contain metadata, they would nonetheless have come within the scope of the warrant.

Hager also argues that Litzinger misled the issuing magistrate judge by recklessly omitting from his affidavit the fact that HSI agents already possessed the metadata for some of the images. As discussed below, see *infra* Section II(C), this fact would not undermine the authorities' need to search the tapes for the Mueller images themselves and for the remaining metadata.

Given the facts of this case, we conclude that it was objectively reasonable for Litzinger to rely on the magistrate judge's determination that there was probable cause to issue the search warrant. Authorities recovered emails and other evidence from Mueller's computer indicating that Hager possessed sexually suggestive images taken by Mueller of Mueller's daughters and that these images might contain metadata. As discussed above, recovery of the images and the metadata would have aided the prosecution against Mueller. See *supra* Section II(B). In short, "[n]othing in our review of the record indicates that the warrant was facially invalid or that the issuing judge abandoned h[er] role as a neutral and detached magistrate." United States v. Keele, 589 F.3d 940, 944 (8th Cir. 2009). Moreover, Litzinger exhibited good-faith reliance on the warrant during his execution thereof. Prior to seizing and searching the VHS tapes, Litzinger contacted a computer forensic expert and the First Assistant United States Attorney for North Dakota to ensure compliance with the warrant. See United States v. Clay, 646 F.3d 1124, 1127 (8th Cir. 2011) ("One relevant circumstance to consider when determining whether an officer's actions were

objectively reasonable is whether the officer consulted with an attorney prior to seeking the warrant."); United States v. Koch, 625 F.3d 470, 477-78 (8th Cir. 2010) (that agent sought legal advice from county attorney's office regarding proper procedure for disposing of evidence, which led to discovery of child pornography, was relevant to good-faith analysis). When Litzinger discovered child pornography on the tapes, he stopped searching the tapes and sought a second search warrant. Accordingly, even if the search warrant were not supported by probable cause, the evidence gained from the search was admissible pursuant to the Leon good-faith exception.

## C. Omission

Hager argues that Litzinger intentionally or recklessly failed to inform the magistrate judge that HSI agents had already recovered the metadata for some of the Mueller images. Hager argues that the warrant should be invalidated because, with this information, the magistrate judge would not have found probable cause to issue the search warrant.

"A search warrant may be invalidated because of omitted facts if (1) 'the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading,' and (2) 'the affidavit, if supplemented by the omitted information[,] would not have been sufficient to support a finding of probable cause.'" United States v. Hart, 544 F.3d 911, 914 (8th Cir. 2008) (quoting United States v. Williams, 477 F.3d 554, 557 (8th Cir. 2007)).

Hager is unable to satisfy either required showing. Hager does not identify any evidence that Litzinger omitted this information from his affidavit with the intent to mislead the magistrate judge or in reckless disregard for the truth.[5] On the contrary,

_____

[5]The government argues that because Litzinger did not know that HSI agents possessed some of the metadata when he applied for the warrant, there could be no

-12-

Litzinger's affidavit made clear by describing the photographs in detail that authorities already had access to the photographs, thereby opening the possibility that authorities had access to at least some of the metadata. Moreover, the fact that authorities had obtained the metadata for some of the images was not "clearly critical" to the finding of probable cause; probable cause would have existed to search for the remaining metadata and for the images themselves. See United States v. Smith, 581 F.3d 692, 695 (8th Cir. 2009) ("[B]ecause a warrant application need only show facts establishing probable cause, 'recklessness may be inferred from the . . . omission of information from an affidavit . . . only when the material omitted would have been clearly critical to the finding of probable cause.'" (omissions in original) (quoting United States v. Ozar, 50 F.3d 1440, 1445 (8th Cir. 1995))).

## D. Second Warrant

Hager argues that the second search warrant was invalid because it was based upon the first, invalid search warrant. Because we conclude that the first search warrant authorized the search of the VHS tapes, was supported by probable cause, and was not invalidated by Litzinger's omission, Hager's "fruit of the poisonous tree" argument regarding the second search warrant fails also. E.g., United States v. McIntyre, 646 F.3d 1107, 1114-15 (8th Cir. 2011).

## III. Conclusion

The judgment is affirmed.

_____

intentional or reckless omission. See Appellee's Br. 41-43. The district court, however, found that Litzinger "had some information in his possession that some of the metadata was actually in the possession of the HSI agents in Michigan." D. Ct. Order of Aug. 31, 2011, at 14.