# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4069

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of South Dakota. |
| Antonio Guzman, | * | |
| | * | |
| Defendant/Appellant. | * | |

_____

Submitted: May 16, 2007
Filed: November 5, 2007

_____

Before WOLLMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Antonio Guzman appeals from his conviction of possession of a firearm by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). Guzman pleaded guilty to this offense, reserving the right to appeal the district court's[1] denial of his suppression motion. He now challenges the district court's refusal to suppress three firearms seized from his house and one firearm seized from a truck. He contends that officers had neither a warrant nor consent for the search of

_____

[1]The Honorable Lawrence L. Piersol, United States District Court for the District of South Dakota.

a truck, and that the warrant for the search of the house was defective and that the good faith exception to the exclusionary rule does not apply. We affirm.

I.

In early 2006, Kim Hare reported to the police that her boyfriend Antonio Guzman had been abusing her. According to Farmer, the Chief of Police for the Bureau of Indian Affairs at the Yankton Agency in Wagner, South Dakota, Kim Hare alleged that since July 2005, Guzman periodically assaulted and threatened her, including putting a rifle barrel inside her mouth and threatening to shoot her head off, firing at her feet and threatening to kill her, and threatening that if she reported such incidents to the police that he had more ammunition than the police and that he would not go to jail. Farmer documented these incidents in an incident report dated March 1, 2006.

On March 3, 2006, Farmer prepared an affidavit and application for a search and seizure warrant requesting a warrant "to locate and arrest Antonio Ramon Guzman" for "Aggravated Assault (DV) with semi-auto rifle and shotgun" and to "confiscate all firearms in his possession used in the domestic violence as well as his threatening any officers attempting to arrest him and his having to go to jail." The affidavit and application described the location of the search as "a residence next to Corky Kazena. . . a single story, one family light blue house with front door facing south off Eggers Road east of Greenwood." That same day, the Chief Judge for the Yankton Sioux Tribal Court signed a Warrant for Search and Seizure. Farmer testified that he forwarded the incident report to the tribal judge for review together with the affidavit and application for the search warrant. Nevertheless, the incident report was not incorporated into the affidavit for the search warrant.

On March 10, 2006, Farmer executed the search warrant. Farmer arrested Guzman the same day at Vicky Holiday's house in Marty, South Dakota after

-2-

receiving information that Guzman would be there that morning. Holiday answered Farmer's knock on the door and acknowledged Guzman's presence in the house. Farmer showed Holiday the arrest warrant and asked permission to enter the house to arrest Guzman. Holiday consented, and officers located and arrested Guzman in one of the bedrooms.

Parked in Holiday's front yard was a truck that matched the description Hare gave of her own truck, which Guzman was driving. Farmer ran the licence plate and confirmed that the truck was registered to Hare. According to Farmer, Hare told him that she had been trying to get the truck back from Guzman and that she wanted the truck back without any weapons in it. The officers asked Guzman for the keys to Hare's truck, but Guzman replied that he had thrown the keys into the weeds behind Holiday's house. Hare did not have another set of keys. Through the truck's window, the officers spotted a firearm on the backseat floorboard. The officers towed the truck to a body shop near Wagner, South Dakota and opened it with a "slim jim" tool. According to Farmer, officers took and secured the firearm pursuant to standard inventory search procedure.

Next, Farmer and another officer proceeded to the house identified in the search warrant, where Hare had lived with Guzman. Guzman rented the house from Hare's uncle, who lived across the yard. According to Farmer, Hare wanted him to remove weapons from the house because she was frightened for her safety and told him the location of a vault where Guzman kept his guns. When officers told Hare's uncle that they had a search warrant, he gave them permission to do whatever was necessary to enter the house. The officers kicked the back door open, entered the house, and found three firearms, two in a locked gun vault in a closet as Hare had described and one behind the sofa in the living room. The officers also found marijuana seeds and roach clips in the kitchen, as well as marijuana, additional marijuana seeds and roach clips, and a scale for weighing marijuana in the living room.

Guzman was indicted on three counts of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1), (2), and (3). He moved to suppress all physical evidence seized from the house and truck, including the three firearms found in the house and one found in the truck. The magistrate judge held a hearing on his motion to suppress evidence and issued a report recommending that it be denied. The magistrate judge found that the affidavit supporting the warrant lacked any showing of probable cause justifying the search of the house because the incident report had not been incorporated into the affidavit, but that the good faith exception of United States v. Leon, 468 U.S. 897 (1984), salvaged the search despite the affidavit's insufficiency. The magistrate judge also found that Hare's consent validated the warrantless search of the truck because she was the truck's owner. The district court adopted the magistrate judge's report and denied Guzman's motion to suppress evidence.

Guzman entered into a conditional plea agreement in which he retained the right to bring this appeal. He pleaded guilty to a superseding information charging a single count of possession of firearms by an unlawful user of a controlled substance. He was sentenced to eight months' imprisonment and three years of supervised release. Guzman appeals the judgment, arguing that Leon's good faith exception did not justify the search of his house and that the officers lacked authority for their warrantless search of the truck.

II.

Guzman contends that the district court erred in denying his motion to suppress evidence seized from his house by improperly applying the good faith exception to the exclusionary rule. When reviewing a denial of a motion to suppress, we review for clear error a district court's factual findings and review de novo whether the Fourth Amendment was violated. United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007).

We review de novo a district court's application of the good faith exception. United States v. Marion, 238 F.3d 965, 968-69 (8th Cir. 2001).

While evidence obtained as a result of a defective search warrant is generally inadmissible, Mapp v. Ohio, 367 U.S. 643 (1961), there is an exception for evidence found by officers relying in objective good faith on a defective search warrant. United States v. Leon, 468 U.S. 897, 920-21 (1984) (establishing the good faith exception). However, four circumstances exist in which the Leon good faith exception does not apply:

> (1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) "the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

United States v. Taylor, 119 F.3d 625, 629 (8th Cir. 1997) (citing Leon, 468 U.S. at 923). A reviewing court can apply the Leon good faith exception and evaluate the reasonableness of an officer's reliance on a warrant without first resolving the Fourth Amendment issue of whether the search warrant lacked probable cause. See, e.g., United States v. Weeks, 160 F.3d 1210, 1212 (8th Cir. 1998). Accordingly, we assume without deciding that the affidavit supporting the search warrant lacked probable cause to search the house.

When we assess the objective reasonableness of the officers who executed a warrant, "we 'must look to the totality of the circumstances,' including any information known to the officers but not presented to the issuing judge." Marion, 238 F.3d at 969 (quoting United States v. Simpkins, 914 F.2d 1054, 1057 (8th Cir. 1990)). The affiant officer in Marion, who was one of the executing officers, knew

additional information that was missing from the search warrant. <u>Marion</u>, 238 F.3d at 967-69. The officer saw Marion make stops after leaving the hotel room, which was later searched. These stops were of a brief duration that is consistent with drug distribution. In addition, cocaine was found in Marion's vehicle before the hotel search was conducted. The same officer testified that the quantity was consistent with distribution and greater than typical for personal use. <u>Id.</u> We upheld the search under the good faith rule, relying on both information in the affidavit supporting the search warrant, which established a connection between the defendant and the place to be searched, plus the officer's knowledge of criminal activity that was not included in the affidavit. <u>Id.</u> at 969. <u>See also</u> <u>United States v. Rodriguez</u>, 484 F.3d 1006, 1012 (8th Cir.) (officer's awareness of information in addition to that in affidavit justified reliance on defective warrant), <u>cert. denied</u>, 2007 WL 2292839 (Oct. 1, 2007).

Guzman argues that the affidavit was so lacking in an indicia of probable cause to render Farmer's reliance on it unreasonable. His argument lacks merit. As in <u>Marion</u>, the affidavit attached to the warrant in this case established a connection between the defendant Guzman and the place to be searched, Guzman's house, but it lacked the connection between the place to be searched and the alleged criminal activity. However, Farmer knew of the missing facts because he had been in frequent contact with Hare, who told him that Guzman had abused her in the house for which the warrant was issued. Farmer recounted Hare's allegations in an incident report, which described several alleged assaults on Hare, the dates of many of these alleged incidents, a description of Guzman's weapon, Guzman's threats of future violence, and the name of at least one witness. While the affidavit did not incorporate the incident report, Farmer presented the incident report together with the affidavit to the issuing judge, which shows that Farmer possessed the relevant information before the warrant was issued. In addition, Farmer testified that Hare directed him to a particular closet in the house where officers located a gun vault. Under the totality of circumstances, taking into account Farmer's knowledge of Hare's allegations of

-6-

domestic abuse against Guzman and her fear of additional violence, it was reasonable for Farmer to believe that the search warrant was valid.

Moreover, the affidavit in this case was not lacking "all crucial information" as Guzman contends. The affidavit established a link between Guzman and the place to be searched. It stated, "Guzman stays in a residence next to Corky Kazena. . . a single story, one family light blue house with front door facing south off Eggers Road east of Greenwood." While the affidavit itself lacked detail, it referenced the domestic violence and the firearms, which were further detailed in the incident report. The only thing lacking, as the district court recognized, was the connection between the criminal activity and Guzman's house. Farmer knew of facts establishing this connection through his repeated conversations with Hare.

Guzman contends that the warrant in this case lacked specificity and therefore was so facially deficient that the executing officers could not have reasonably presumed it to be valid. We reject Guzman's contention. A warrant is facially deficient if it lacks detail as to the place to be searched or the objects to be found. See United States v. Frangenberg, 15 F.3d 100, 103 (8th Cir. 1994). The warrant in this case did not lack specificity because it adequately identified the house to be searched as "blue colored house facing south off Eggers Road east of Greenwood, South Dakota" and the property to be seized as "all firearms located in the house," and it named the person to be seized as "defendant, Antonio Guzman." There is no error in the district court's conclusion that, in a rural area where houses are not numbered, the description provided in the warrant was sufficient to locate the place to be searched.

Guzman argues that the warrant insufficiently described the objects to be seized, making Farmer's reliance on it unreasonable under Groh v. Ramirez, 540 U.S. 551 (2004). The Court in Groh held in a qualified immunity case that a search warrant that did not describe the items to be seized but merely repeated the location of the

dwelling as the description was so facially deficient that an officer could not reasonably presume such warrant to be valid. 540 U.S. at 558, 565. The warrant in this case clearly listed the person to be arrested and items to be seized and therefore is distinguishable from the warrant in Groh. We hold that the district court did not err in holding that the search of the house did not violate Guzman's Fourth Amendment rights even if the affidavit in support of the warrant did not show probable cause.

## III.

Guzman contends that evidence from the warrantless search of the truck should have been suppressed because the government did not prove that the owner of the truck consented to the search. The district court held that Hare, as the owner of the truck, had authority to consent to its search. While the Fourth Amendment requires the police to obtain a warrant before a search, consent is a valid exception to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). The government bears the burden of proving that an exception to the warrant requirement exists. United States v. Weston, 443 F.3d 661, 667 (8th Cir.), cert. denied, 127 S. Ct. 417 (2006). Consent may be given either by the suspect or by some other person who has common authority over, or a sufficient relationship to, the premises to be searched. Id. (citing United States v. Matlock, 415 U.S. 164, 171 (1974)). An officer must reasonably believe that under the totality of the circumstances, the other person has authority to consent. Weston, 443 F.3d at 668. Therefore, we consider whether the facts available to the officer at the time the consent was given justify a person of reasonable caution in believing that the consenting party had authority over the item to be searched. Id. The determination of reasonableness is a question of law that we review de novo. Id.

The district court correctly held that Hare, as the owner of the truck, had authority to consent to its search. An owner of a vehicle may consent to its search even if another person is driving the vehicle. United States v. Booker, 186 F.3d 1004,

1006 (8th Cir. 1999). A vehicle's owner "retain[s] a right to admit others to it at anytime." Id. (emphasis added). In this case, Farmer established at the suppression hearing that Hare was the owner of the truck. Therefore, under Booker, Hare had authority to consent to its search.

Guzman challenges Hare's authority to consent by contending that he had exclusive possession of the truck because he had its only set of keys and such exclusive possession gave him a reasonable expectation of privacy in the truck. Even if we assume that Guzman had exclusive possession of the truck, we reach the same result because it was reasonable for Farmer to believe that Hare had authority to consent. See Weston, 443 F.3d at 668 (holding that in assessing a party's authority to consent, the critical question for this court to determine is not the actual relationship between the owner and the consenter, but whether it was reasonable for the officer to believe that the party had authority to consent). First, according to Farmer's testimony at the suppression hearing, Hare told him that she had been trying to get her truck back from Guzman for several weeks and that she wanted the truck without any weapons in it. Second, Hare's description of the truck matched the truck that Farmer saw parked outside of Vicky Holiday's residence. Third, Farmer testified that before the vehicle was towed and eventually searched, he ran the plate to confirm that Hare was the owner of the vehicle. Provided these facts, it was reasonable for Farmer to conclude that Hare had authority to consent to the search of the truck.

In addition to challenging Hare's authority to consent, Guzman also challenges the effectiveness of her consent. Guzman contends that Hare's statements were not knowing and voluntary and that Farmer improperly inferred consent from Hare's statement that she did not want a vehicle with weapons in it. But according to Farmer's testimony, Hare wanted him to make sure that there were no weapons in the truck when it was returned to her. It was reasonable for Farmer to infer consent to search from Hare's statement because her statement implied her authorization for him to enter the truck and remove any weapons. Hare's statement went beyond mere

acquiescence to search and was also knowing and voluntary. While Guzman correctly points out that Hare never explicitly uttered the words, "I consent," her statement that she wanted weapons removed from the truck before it was returned to her amounted to a consent to search because it implied that Farmer could enter her truck, look for, and remove weapons–in effect conduct a search. We conclude that Farmer's belief that Hare had authority to consent to the search of her truck was reasonable.

## IV.

For the foregoing reasons, we conclude that the district court did not err in applying the <u>Leon</u> good faith exception to justify the search of the house or in finding that the police had authority for their warrantless search of the truck based on the owner's consent. Accordingly, we affirm the district court's denial of Guzman's motion to suppress evidence.

_____