# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1177

_____

|                              |     |                                |
|------------------------------|-----|--------------------------------|
| United States of America,    | *   |                                |
|                              | *   |                                |
| Appellee,                    | *   |                                |
|                              | *   | Appeal from the United States  |
| v.                           | *   | District Court for the Southern |
|                              | *   | District of Iowa.              |
| Michael Anthony Clay,        | *   |                                |
|                              | *   |                                |
| Appellant.                   | *   |                                |

_____

Submitted: June 17, 2011
Filed: July 28, 2011

_____

Before BYE and MELLOY, Circuit Judges, and SMITH CAMP,[1] District Judge.

_____

BYE, Circuit Judge.

Michael Clay appeals the district court's[2] denial of his motion to suppress the items recovered during a search of his apartment, undertaken pursuant to a search warrant. Clay entered a conditional guilty plea to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

Exercising his reserved right to appeal the suppression ruling, Clay challenges the existence of probable cause allowing the officers to perform the search of his apartment and the district court's application of the good-faith doctrine to the police officer's reliance on the judge-issued search warrant. We affirm.

I

In May 2009, a confidential informant ("CI") provided Des Moines Police Officer Robert Hoelscher ("Officer Hoelscher") with information concerning Michael Clay's sale of marijuana and cocaine from his apartment in Des Moines. The CI described Clay as a six-foot tall, 185-pound black male. The CI subsequently cooperated with Officer Hoelscher by conducting three controlled marijuana buys from Clay. Officer Hoelscher followed specific protocol for all of the buys, including (1) searching the CI to ensure the CI did not have any drugs, money, or other contraband prior to the buy; (2) giving the CI money in order to conduct the buy; (3) following the CI to and from Clay's apartment building; (4) meeting with the CI after the buy to recover any narcotics the CI purchased; (5) again searching the CI for contraband; and (6) debriefing the CI. The time during which no officer directly observed the CI's actions was limited to the moments inside Clay's building.

During his debriefing following the first buy, the CI claimed he entered the apartment building and went directly to Clay's apartment on the second floor. Clay told the CI to wait at the bottom of the stairs, after which time the CI witnessed Clay meet with an individual for about thirty seconds in another apartment on the second floor. After this meeting, Clay called the CI back up to the second floor, delivered the marijuana to the CI, and the CI exited the apartment building. Officer Hoelscher and Officer John Scarlett, who was also present during the buys, testified the CI provided Officer Hoelscher with detailed information in response to questions about the buy. Additionally, the CI positively identified Clay from a picture as the man from whom he purchased the marijuana. The second and third controlled buys

proceeded similarly to the first, with only minor differences. During the second buy, Clay returned inside his own apartment for about thirty seconds before returning with the marijuana. During the third buy, Clay and the CI exchanged the cash for the marijuana without any interlude.

Although not present in Clay's apartment building during the buys, Officer Hoelscher testified he completed a walkthrough of Clay's apartment building and verified the layout matched the CI's description. Officer Hoelscher also wired the CI during the first and third buys, which allowed Officer Hoelscher to hear every other word of the interchanges, thus providing him with an understanding of what occurred inside Clay's apartment building. However, the information about the walkthrough of the building and use of a wire was not included in the search warrant application and not provided to the judge issuing the warrant.

Officer Hoelscher initially applied for a search warrant after the second controlled buy, following the consultation with an assistant prosecuting attorney for Polk County, Iowa. Officer Hoelscher testified that in his experience, the prosecutor reviewing the application will notify officers if they need to gather more information to establish probable cause. Since the prosecuting attorney did not believe Officer Hoelscher needed to supply extra information, he submitted the application to Polk County District Associate Judge Cynthia Moisan. Judge Moisan issued a warrant allowing for the search of Clay's apartment; however, the tactical unit needed to execute the search could not be procured and the search warrant became stale. See Iowa Code § 808.8 (1978) (requiring a search warrant to be executed within ten days from the date of issuance). Officer Hoelscher applied for another search warrant after the third controlled buy, again consulting an assistant prosecuting attorney for Polk County for review before submission. The prosecutor did not return the application citing a need for more information, so Officer Hoelscher again submitted the application to Judge Moisan, who issued the search warrant.

The search of Clay's apartment revealed a loaded pistol, mail addressed to Clay at the apartment's address, a digital scale, two hundred dollars, and drug paraphernalia. Clay filed a motion to suppress, arguing the search warrant application did not provide adequate probable cause to support the issuance of the warrant because law enforcement was unable to corroborate the CI's statements given they were not actually present in the apartment when the buys occurred. Clay also argued the good-faith exception to the exclusionary rule under United States v. Leon, 468 U.S. 897 (1984), would not apply because a reasonably well trained officer would not believe the warrant was supported by sufficient probable cause. The district court did not reach the probable cause issue and instead upheld the search under the Leon good-faith doctrine. Clay now appeals the denial of his motion to suppress, raising the same two issues.

II

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its Fourth Amendment determination de novo. United States v. Guzman, 507 F.3d 681, 684 (8th Cir. 2007). We also review de novo the district court's application of the Leon good-faith exception to the exclusionary rule. Id. at 684-685. "[W]e may consider the applicability of the good-faith exception to the exclusionary rule before reviewing the existence of probable cause." United States v. Warford, 439 F.3d 836, 841 (8th Cir. 2006).

The Supreme Court held the exclusionary rule should not be applied so as to bar the admission of "evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate," even if that search warrant is later held to be invalid. Leon, 468 U.S. at 900, 922-23. "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008)

(internal quotation marks and citation omitted). In determining the presence of good-faith reliance on a judge-issued search warrant, the court must consider totality of circumstances, including information not presented to the judge issuing the search warrant but known to the police officers. Id.

One relevant circumstance to consider when determining whether an officer's actions were objectively reasonable is whether the officer consulted with an attorney prior to seeking the warrant. United States v. Johnson, 78 F.3d 1258, 1264 (8th Cir. 1996). Officer Hoelscher sought the advice of an assistant Polk County prosecuting attorney before each of the two applications for a search warrant. By custom, if the attorney believed more evidence was needed to secure a search warrant, she would return the applications to the officer. Officer Hoelscher, however, did not have either application returned from the attorney, which supports his objective reasonableness in relying on the warrant.

Officer Hoelscher also interviewed the CI in person, a circumstance further supporting Officer Hoelscher's good-faith reliance on the warrant, see United States v. Carpenter, 422 F.3d 738, 744 (8th Cir. 2005) (finding "officers could assess the informant's credibility because the information was provided in person"), and had first-hand knowledge of the deals from his participation in the three controlled buys. Cf. United States v. Kattaria, 553 F.3d 1171, 1178 (8th Cir. 2009) ("There is an inherent indici[um] of reliability in the richness and detail of a first hand observation.") (internal quotation marks and citation omitted).

Moreover, we have held when the CI's information is independently corroborated by the officers, the information is more likely to be reliable. United States v. Neal 528 F.3d 1069, 1073 (8th Cir. 2008). Considering evidence available to the officer, but not perhaps the judge, see Perry, 531 F.3d at 665, Officer Hoelscher was able to hear much of the drug sales through the audio he received from the transmitter the CI wore during the first and third controlled buys. He also completed

a walkthrough of Clay's apartment building and verified the layout matched the CI's description. The CI further identified Clay as the individual who sold him marijuana in a photograph presented by Officer Hoelscher. Taking into account all of the surrounding circumstances, the officers could act in good-faith on the warrant issued by the judge. See Kattaria, 553 F.3d at 1178 ("It is not objectively unreasonable to execute a warrant where there was evidence to corroborate [an informant's] tip and where an independent magistrate had found that the affidavit stated probable cause.") (internal quotation marks and citation omitted).

Clay contends, however, no reasonably well trained officer would believe the sufficiency of the warrant because of the failure to establish the CI's reliability. He cites United States v. Jackson, 818 F.2d 345, 350 (5th Cir. 1987), where the Fifth Circuit held an affidavit did not support a finding of probable cause because it failed to show the informant's reliability and veracity. Beyond finding no probable cause to support the warrant, the court further noted the total lack of reliability rendered the good-faith exception inapplicable. Id. at 350 n.8. Viewing the present case in totality quickly shows Jackson is distinguishable because the CI in the present case was reliable and the information he provided was corroborated. The CI here provided very specific details about the occurrences inside the apartment building; his testimony was corroborated by the portions of the interchange between the CI and Clay the transmitter was able to record. Additionally, the CI submitted himself to questioning as part of the debriefs, during which time he was able to identify Clay as the person who sold him the marijuana.

Accordingly, the district court properly denied Clay's motion to suppress based on the Leon good-faith exception. In light of this conclusion, we need not reach the underlying question of probable cause.

## III

For the foregoing reasons, we affirm the district court's denial of Clay's motion to suppress.

_____