# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2268

_____

United States of America,                           *
                                                    *
              Plaintiff – Appellee,                 *
                                                    *   Appeal from the United States
       v.                                           *   District Court for the
                                                    *   Northern District of Iowa.
Ricky Patten,                                       *
                                                    *
              Defendant – Appellant.                *

_____

Submitted: November 17, 2011
    Filed:   December 28, 2011

_____

Before RILEY, Chief Judge, BEAM and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Ricky Patten pleaded guilty to one count of sexual exploitation and attempted sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (e), and two counts of possession and attempted possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). However, he reserved the right to appeal the district court's[1] denial of his motion to suppress. Patten now raises this issue on appeal, as well as a challenge to his 480-month term of imprisonment. We affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, adopting the report and recommendations of the Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa.

I

In 2003, Ricky Patten married H.P., who had a child from a previous relationship, T.A. On July 12, 2010, T.A., then fifteen years old, reported to Officer Terry Oltman of the Grundy Center, Iowa Police Department, that Patten had sexually abused her. According to T.A., Patten took nude and sexually explicit photographs of her beginning when she was twelve years old. She noted he used a black digital camera, and he hid the memory disks for the camera above the furnace in the basement. Shortly after T.A.'s thirteenth birthday, Patten began sexually abusing her, which increased in frequency over time, and included acts of vaginal intercourse, anal intercourse, and oral sex. In addition, T.A. reported incidents of Patten's violent behavior. For instance, she stated Patten became "so angry over little things" that he would scream, throw objects, and punch walls. On one occasion, Patten shook T.A.'s shoulders and slammed the back of her head against a wall. Patten also made various threats about killing himself and others, and he threatened to leave the family.

Oltman, working with a deputy sheriff and an assistant county attorney, prepared a search warrant application for Patten's residence based on the information. However, he excluded T.A.'s name or initials in the application, and instead he used phrases such as "it was reported" to indicate the source of the information. After the issuing judge interviewed Oltman about further details concerning T.A.'s location, Patten's location, whether the case was ongoing, and whether Oltman was familiar with the property, the judge approved the search warrant.

During the execution of the search warrant, the officers discovered the camera and memory cards described by T.A. Patten also admitted his sexual activity with T.A., both at the scene and later at the police station. Two days later, the officers obtained a second search warrant to allow for the seizure and forensic examination of additional items. The subsequent examination of the nine memory cards, two digital

cameras, laptop computer, and two USB drives revealed a total of 3,059 images of T.A., including at least 1,010 files depicting child pornography.

After Patten was originally charged with one count of sexual exploitation of a minor and five counts of possession of child pornography, he moved to suppress evidence from the search, arguing the warrant was not supported by probable cause. In conjunction with a report and recommendation from the magistrate judge, the district court denied the motion. Patten then entered a conditional guilty plea to one count of sexual exploitation and attempted sexual exploitation of a minor, and two counts of possession and attempted possession of child pornography. After calculating an advisory Guidelines range of 292 to 365 months, the court heard testimony from T.A. and received two government exhibits into evidence. The court denied Patten's motion for a downward departure and a variance, and granted the government's motions for an upward departure under U.S.S.G. § 5K2.0 and 5K2.8, and an upward variance under 18 U.S.C. § 3553(a). The court sentenced Patten to 480 months, consisting of 360 months on the sexual exploitation count and 120 months on each of the child pornography counts, with the latter two counts running concurrent to each other, but consecutive to the sexual exploitation count. Patten appeals.

II

Patten raises two issues, challenging the denial of his motion to suppress and the imposition of his 480-month sentence. We examine each of these in turn.

A. Motion to Suppress

"We review the district court's factual determinations underlying the denial of a motion to suppress for clear error and its legal conclusions *de novo*." United States v. Cisneros-Gutierrez, 598 F.3d 997, 1003 (8th Cir. 2010). "We also review de novo

the district court's application of the <u>Leon</u> good-faith exception to the exclusionary rule." <u>United States v. Clay</u>, 646 F.3d 1124, 1127 (8th Cir. 2011).

Patten first contends the search warrant was not supported by probable cause because the application contained no finding of reliability concerning the source of the information, no indication of who the source was, and no statement as to the source's credibility or why the officer believed the information was trustworthy. Patten asserts there was no corroboration of the allegations, and, taken together, this was a bare bones application for a search warrant in violation of the Fourth Amendment.

"'We may consider the applicability of the good-faith exception to the exclusionary rule before reviewing the existence of probable cause.'" <u>Id.</u> (quoting <u>United States v. Warford</u>, 439 F.3d 836, 841 (8th Cir. 2006)). Employing this approach here, we conclude the district court properly denied Patten's motion to suppress based on the good faith exception, regardless of whether the affidavit was sufficient to establish probable cause. "Under the <u>Leon</u> good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." <u>United States v. El-Alamin</u>, 574 F.3d 915, 924 (8th Cir. 2009) (internal quotation marks and citation omitted). However, among other circumstances, the good faith exception is inapplicable "when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*. <u>United States v. Fiorito</u>, 640 F.3d 338, 345 (8th Cir. 2011). Patten claims this is the case here, rendering Oltman's reliance on the warrant entirely unreasonable. We disagree.

Guided by our recent decision in <u>Clay</u>, we conclude three factors support Oltman's objective reasonableness. First, Oltman consulted with the assistant county attorney in drawing up the application. See <u>Clay</u>, 646 F.3d at 1127 ("One relevant

circumstance to consider when determining whether an officer's actions were objectively reasonable is whether the officer consulted with an attorney prior to seeking the warrant."); United States v. Perry, 531 F.3d 662, 666 n.6 (8th Cir. 2008) (noting the prosecutor's determination the affidavit provided probable cause for the search supported the officer's reasonable belief). Second, Oltman interviewed T.A. in person, and thus he had a greater opportunity to assess T.A.'s credibility. See Clay, 646 F.3d at 1127 ("[The officer] also interviewed the CI in person, a circumstance further supporting [the officer's] good-faith reliance on the warrant[.]"). Third, T.A. had first-hand knowledge of the sexual abuse and photographs, as she was the subject of the abuse. See United States v. Kattaria, 553 F.3d 1171, 1178 (8th Cir. 2009) ("There is an inherent indici[um] of reliability in the richness and detail of a first hand observation.") (internal quotation marks and citation omitted). Based on these factors, we conclude the district court properly applied the good faith exception. Accordingly, "we need not reach the underlying question of probable cause." Clay, 646 F.3d at 1128.

### B. Patten's Sentencing Challenge

Patten next contends his 480-month sentence is excessive and runs afoul of the Eighth Amendment's ban on cruel and unusual punishment. He argues the sentence went far beyond what was necessary to accomplish the sentencing goals. Patten frames his appeal as a challenge to an illegal sentence in light of the plea agreement he entered wherein he waived his appeal rights.

To the extent Patten challenges the reasonableness of his sentence, his claim is barred by the appeal waiver contained in the plea agreement. "We will enforce a defendant's appeal waiver against all issues that fall within the scope of the waiver if the defendant entered the plea agreement and appeal waiver 'knowingly and voluntarily' and enforcement of the waiver would not cause a 'miscarriage of justice.'" United States v. Boroughf, 649 F.3d 887, 890 (8th Cir. 2011) (quoting

United States v. Scott, 627 F.3d 702, 704 (8th Cir. 2010)). Patten's attack on the reasonableness of his sentence falls within the scope of his appeal waiver, and there is nothing to show the plea agreement and waiver were not entered into knowingly and voluntarily or that a miscarriage of justice would result. Id.

While Patten waived his reasonableness challenge, we may still consider his Eighth Amendment argument. This court reviews challenges based on the Eighth Amendment de novo. United States v. Neadeau, 639 F.3d 453, 456 (8th Cir. 2011). "[T]his Court has never held that a sentence within the statutory range violates the Eighth Amendment." Id.; see also United States v. Collins, 340 F.3d 672, 679 (8th Cir. 2003) ("It is well settled that a sentence within the range provided by statute is generally not reviewable by an appellate court."). After careful review, we conclude this is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." United States v. Spires, 628 F.3d 1049, 1054 (8th Cir. 2011) (internal quotation marks and citation omitted).

We affirm.

_____