# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2979

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| Thomas S. Ginn, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: March 12, 2012
Filed: March 19, 2012

_____

Before WOLLMAN, BOWMAN, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Thomas Ginn was charged in a three-count indictment with being a felon in possession of a firearm, possession with intent to distribute marijuana, and possession of a firearm in furtherance of a drug-trafficking crime. After the District Court[1] denied his motion to suppress, Ginn pleaded guilty to the third count, and the District

_____

[1] The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

Court[2] sentenced him to the statutory minimum of sixty months in prison. Ginn reserved the right to challenge the denial of his motion to suppress, and now does so in this appeal. We affirm.

On appeal from the denial of a motion to suppress, we review a district court's factual findings for clear error and its legal conclusions de novo. United States v. Patten, 664 F.3d 247, 250 (8th Cir. 2011). After an evidentiary hearing on Ginn's suppression motion, conducted over three days, the Magistrate Judge found the following facts, which were adopted by the District Court.

Early in the morning on November 1, 2009, St. Joseph, Missouri, police officer B.J. Fisher was on patrol in midtown St. Joseph when he passed an oncoming Chevy Suburban and recognized the driver as Ginn, whom Fisher had seen at the St. Joseph jail three weeks earlier. When Fisher tried to read the Suburban's license plate, he noticed that the license-plate light was burned out, an infraction under Missouri law. Fisher turned his patrol car around to catch up to Ginn, who then began driving evasively. Fisher finally found the unoccupied Suburban parked in an alley and continued driving around hoping to spot Ginn. By then, officer Jason Wilhoit had arrived in his patrol car to provide backup. When the officers saw Ginn walking, they approached him and told him not to move. Ginn nevertheless continued walking and then began to run. Ginn eventually ran onto the front porch of his residence, although the officers did not know at the time that Ginn sometimes lived there. Wilhoit saw Ginn display a handgun and alerted Fisher. Ginn went into the residence and tried to shut the door on the officers. Fisher and Wilhoit eventually forced the door open, entered the home, and found Ginn and a woman, who they later learned was Ginn's wife, Michelle. When Ginn appeared prepared to fight, Wilhoit tasered him twice, and the officers then handcuffed him. Additional officers had arrived by then, and

---

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, to whom the case had been transferred.

Ginn was arrested and taken to the police station. After delivering Ginn to other officers outside the home, Fisher went back inside the residence to find Wilhoit questioning Michelle Ginn, asking her who lived in the house. At that time, Fisher spotted, in plain view, marijuana, a scale, and a marijuana grinder on the bottom shelf of a coffee table and some plastic baggies elsewhere in the room. He field-tested some residue that was on the scale, and it tested positive for cocaine. After Michelle Ginn refused consent to search the house, officers obtained a search warrant. Searching officers seized the scale and grinder, the baggies, a large quantity of marijuana, and four firearms, among other things.

On appeal, Ginn first claims that the District Court adopted the Magistrate Judge's Report and Recommendation (R&R) without conducting a de novo review. We will ordinarily presume that the District Court conducted the review required by 28 U.S.C. § 636(b)(1). See United States v. Azure, 539 F.3d 904, 911 (8th Cir. 2008). It is Ginn's burden to rebut that presumption "by providing affirmative evidence to the contrary." Id. The "evidence" Ginn points to here is the order of the District Court, the brevity of which, Ginn contends, proves that the District Court did not conduct a de novo review in this case. The District Court concluded that the R&R was "thorough and well-reasoned," "agree[d] with the recommendation," and saw "no reason to comment further." Order of Sept. 10, 2010. The court's order did not say that the court had conducted a de novo review, nor did it indicate that the court had considered Ginn's objections to the R&R. But the court was not required to affirmatively declare that it had done so. See United States v. Hamell, 931 F.2d 466, 468 (8th Cir.) ("To hold that this case must be remanded solely because the district court did not specifically state that it had done a complete de novo review would, in effect, create a presumption that the district judge acted improperly."), cert. denied, 502 U.S. 928 (1991). All three volumes of the suppression-hearing transcript were available for review by the District Court when the R&R was filed, so the District Court's order, while it could have been more explicit regarding the scope of the court's review, is not evidence that the experienced District Court Judge did not

conduct the required review. See Jones v. Pillow, 47 F.3d 251, 253 (8th Cir. 1995). Likewise, the fact that the District Court did not comment on the Magistrate Judge's credibility determinations (that the magistrate found the testifying officers more credible than Ginn and his wife) is not affirmative evidence that the District Court failed in its duty to conduct a de novo review.

Next, Ginn argues there were no exigent circumstances to justify the officers' entry into the residence without a warrant. According to the factual findings in the R&R, Fisher knew that Ginn had previously been arrested; Ginn drove evasively as Fisher tried to follow him; Ginn ran from the officers when they told him to stop; Ginn ran into a residence in the early morning hours to evade the officers, and the officers did not know he was living there; and one of the officers saw Ginn brandish a handgun. Taken together, these facts show exigency. But Ginn contends that "[t]he factual findings in this case were explicitly based on complete acceptance of the officers' testimony and complete rejection of the Ginns'," and the findings were therefore clearly erroneous. Br. of Appellant at 24. Ginn challenges the failure of the R&R to detail all of the Ginns' testimony, weigh it against the officers' testimony, and specifically resolve the conflicts. See id. at 29. But the R&R noted that the court had considered the demeanor of the witnesses at the hearing; their interest in the outcome of the motion to suppress; and "the opportunity of the witnesses to hear, observe, and recall what was said or done" when concluding that the officers were more credible than the Ginns. R&R at 2 n.1. On appeal, we defer to the fact-finder's view of the evidence, and "where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." United States v. Almeida-Perez, 549 F.3d 1162, 1173 (8th Cir. 2008). Moreover, credibility findings that are not "internally inconsistent" are entitled to even greater deference. Id. There are no internal inconsistencies in the factual findings. The court adequately explained the rationale behind the credibility findings and was not required to go through the testimony point by point. Because the factual findings in question were not clearly

-4-

erroneous, the court properly concluded that those facts supported a determination of exigent circumstances in this case.

Finally, Ginn contends that any exigent circumstances ended when the officers arrested Ginn and removed him from the residence—before the incriminating evidence was observed in plain view and used to obtain a warrant. We disagree. Wilhoit remained in the residence to ask Michelle Ginn about the occupants of the house, and Fisher returned to complete the investigation into what the officers believed might have been an illegal home entry by an armed individual who had evaded and disobeyed police. When Fisher returned, he spotted the plain-view evidence while Wilhoit was still speaking with Michelle Ginn about the persons who resided in the home. These factual findings are not clearly erroneous, and the conclusion of continuing exigency, based on these facts, is not error.

We affirm the order of the District Court denying Ginn's motion to suppress.

_____